# EXHIBIT 1

CAUSE NO. _____

| | | |
|---|---|---|
| DAVID PEMBERTON, | § § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § | |
| V. | § § | |
| | § | HARRIS COUNTY, T E X A S |
| LLOYD'S REGISTER DRILLING INTEGRITY SERVICES, INC., | § § § | |
| Defendant. | § § § | _____ JUDICIAL DISTRICT |

### AFFIDAVIT OF DAVID PEMBERTON

STATE OF T E X A S §
§
COUNTY OF HARRIS §

On this day, personally appeared before me, the undersigned authority, who upon his oath, deposes and states:

1. My name is David Pemberton. I go by "Dave."

2. I was employed by WEST Hou, Inc. and then Lloyd's Register Drilling Integrity Services, Inc. ("Lloyd's Register" or "LRDIS"), after it purchased WEST Hou, Inc. in April 2013.

3. I was born in January 1949. As such, I was already in my mid-60s when Lloyd's Register bought WEST Hou, Inc. and I was one of the older workers in the workforce at Lloyd's Register.

4. Jeff Sattler, Vice President of Engineering for Lloyd's Register, was my supervisor from approximately July 2010 until he left the Drilling Department in June 2014. We got along well and he was happy with my job performance, attitude, customer relationships, etc.

5. After that, Dorrith Niepce-Thomas was my supervisor between July 1, 2014 until I was assigned to John Hoefler on September 1, 2015 (see below). We got along well and she was happy with my job performance, attitude, customer relationships, etc.


EXHIBIT 1

6. Approximately September 1, 2015, John Hoefler took over as my supervisor after Dorrith Niepce-Thomas. Hoefler was a Vice President. He was fairly new to LRDIS, having joined the Company in approximately May 2015.

7. On Thursday, September 10, 2015, Ricky Eaton, Manager of Intervention Well Control, told me that Dave Kercsmar of Cross Group, Inc. stated that he did not want me involved in any projects Cross Group, Inc. did with Lloyd's Register. I did not believe that, because I had a very good working relationship with the entire Cross Group, Inc. for almost five years that included 30 to 40 projects during which I had worked nights and weekends to support them.

8. So I immediately complained to John Hoefler (E-mail from Pemberton to Williams of 09/12/15, Ex. A at p. 2 of 3). Hoefler claimed that he and Eaton were together when Kercsmar made the statement, but then admitted that he did not recall hearing Kercsmar make the statement (E-mail from Pemberton to Williams of 09/12/15, Ex. A at p. 2 of 3). Hoefler showed no interest in getting the truth or assisting me. It appeared to me that Hoefler was working with Eaton to try to get rid of me based on the manufactured lie that Kercsmar had supposedly said that he did not want me involved in any projects Cross Group, Inc. did with Lloyd's Register.

9. Consequently, on Saturday, September 12, 2015, I then complained in writing to Ruby Williams, a Quality HSSE Manager for LRDIS (E-mail from Pemberton to Williams of 09/12/15, Ex. A at pp. 1-2 of 3). Again, nothing was done to investigate the matter or assist me.

10. Instead, on Thursday, September 17, 2015, LRDIS fired me for what it called "cause." At the time, I was 66-years old (*Id.*). I was devastated and distraught.

11. In the meantime, however, I had communicated with Kercsmar (E-mail from Pemberton to Kercsmar of 09/10/15, Ex. A at p. 3 of 3), and Kercsmar had told me that he had not said that he did not want me involved in any projects Cross Group, Inc. did with LRDIS, or any words to that effect. Kercsmar also later informed me that the day after I had first informed him of the allegation that he had said such a thing, Friday, September 11, 2015, he had called Eaton and Hoefler and told them that he had never made any such statement E-mail from Pemberton to Kercsmar of 09/17/15, Ex. B at p. 2 of 3).

12. Kercsmar offered to write me a letter stating the he had not said that he did not want me involved in any projects Cross Group, Inc. did with LRDIS, or any words to that effect (E-mail from Pemberton to Kercsmar of 09/17/15, Ex. B at pp. 1-2 of 3). After talking with Cross Group, Inc.'s legal counsel, however, he declined to write the letter at the time because he (Kercsmar) was not sure that, in fact, LRDIS had terminated me for any reason associated with he or Cross Group, Inc. As Kercsmar stated:

From: David Kercsmar [dkercsmar@thecrossgroup.com]

Sent: Tuesday, September 22, 2015 8:48 AM
To: Dave Pemberton
Subject: RE: Update

David,

After our discussion I have informed our counsel of my intentions regarding your termination and the letter I was thinking about writing. Since I have no proof that the exact reason for your termination was because of a related matter with me or our company, our counsel suggested I stay completely out if this matter. Therefore I will not be able to involve myself at this time. I hope this does not impede our friendship and looking forward to working with you in the future.

Best Regards,

David Kercsmar

(E-mail from Kercsmar to Pemberton of 09/22/15 at Ex. B at p. 1 of 3).

13. I filed a timely Charge of Discrimination with the Texas Workforce Commission – Civil Rights Division ("TWC-CRD") and the Equal Employment Opportunity Commission ("EEOC"), alleging age discrimination in my termination.

14. LRDIS provided a Position Statement to the EEOC/TWC-CRD that indicated that indeed its termination of me was based on the alleged statement from Kercsmar that he that he did not want me involved in any projects Cross Group, Inc. did with LRDIS. LRDIS even asserted in its Position Statement that I had done something wrong and "extremely unprofessional" by e-mailing Kercsmar on September 10, 2015, shortly after Eaton had told me that Kercsmar had said that he that he did not want me involved in any projects Cross Group, Inc. did with LRDIS.

15. After receiving a copy of LRDIS's Position Statement, I called Kercsmar and left him a voicemail to let him know that, indeed, LRDIS was taking the position that it had terminated me based on an alleged statement from Kercsmar that he that he did not want me involved in any projects Cross Group, Inc. did with LRDIS. When LRDIS got a copy of the voicemail, its outside legal counsel from Littler Mendelson, P.C. sent a letter and e-mail that both wrongly accused me of all manner and sort of wrongdoing in writing, and threatened to sue me over the call. I regarded that as an intimidation tactic by LRDIS.

16. In its Position Statement to the EEOC/TWC-CRD, LRDIS also tried to portray me as being a chronically abusive, abrasive, insubordinate, unprofessional employee who was disliked by coworkers and customers alike. All that is false. I was never counseled, disciplined, or coached about allegedly being abusive, abrasive, insubordinate, or unprofessional, because, in fact, I was not abusive,

3

abrasive, insubordinate, unprofessional. In addition, as demonstrated in part by the affidavits that have already been given by my former managers, coworkers, and customers, I was not generally disliked by coworkers or customers. To the contrary, I was generally liked by coworkers and customers. I was diligent in ensuring that company policies and processes were adhered to because failure to adhere to company policies and processes could be lives at risk on deep-water off-shore oil rigs and that was not something I ever took lightly.

17. At the time of his termination from LRDIS, I was earning a base salary of approximately $239,210.40. I also received other benefits and was eligible to receive a bonus. In total, in my last full year with LRDIS, 2014, I earned $315,354.20 in gross pay from LRDIS as reported by the Company on my 2014 W-2 (Ex. C).

18. Although I have diligently looked for substantially comparable replacement employment, I have not earned any money from working or employment since LRDIS terminated my employment on September 17, 2015. I did receive unemployment benefits in the amount of $12,454.00 between October 2015 and April 2016 (Ex. D). According to LRDIS I am bound by a non-compete agreement that has hampered and limited my ability to obtain substantially comparable replacement employment consistent with my experience and work history in the oil and gas industry.

19. The documents attached to my affidavit as Exhibits A through C are true and correct copies of the originals. Exhibit D is accurate in its reflection of the amount of unemployment benefits I have received. The other documents attached to my Original Petition in this case as exhibits are true and correct copies of the originals.

_____
David Pemberton

SUBSCRIBED AND SWORN TO before me on this the 7th day of June 2016, certify which witness my hand and seal of office.

_____
Notary Public in and for
The State of T E X A S
Printed name: Angela S Clark
My commission expires: 5-20-19

ANGELA S. CLARK
NOTARY PUBLIC-STATE OF TEXAS
COMM. EXP. 05-20-2019
NOTARY ID 1007604-4

4

# EXHIBIT 1-A



-----Original Message-----
From: Pemberton, Dave
Sent: Saturday, September 12, 2015 8:45 AM
To: Williams, Ruby
Subject: Customer complaint against Dave Pemberton

Ruby --

I was informed by Ricky Eaton late Thursday PM that David Kercsmar from



Cross Solutions has required that if Cross does any projects with LR, I must not be involved in any component of that project. I find this difficult to accept as the Comp Team has been providing service to Cross projects for almost 5 years which includes working evenings and weekends as required to support them. I would estimate 30-40 projects.

Expressing pretty much the same, I went to Hoefler with a request that this accusation be investigated and confirmed as I felt that it couldn't be true. He stated that he and Ricky were together when Kercsmar made the statement although Hoefler says he didn't recall hearing it. However, he showed no interest in any follow-up action though he did recount some software purchase deal where the original guy was replaced with another one --huh? I got up and walked out of his office at the point. For the record, Eaton told me that Kercsmar made the statement to him and Mike Crosby at a lunch meeting, Eaton did not say Hoefler was at that meeting. So, either Kercsmar is saying this all the time or that is one hole in the story.

FYI -- I made the pitch for the BOP young engineers and Comp Team personnel to be trained and approved for this type of work to Greg early this year. He liked the concept and I presented the details to JB during the budget discussions for '15-'16 as primarily an increase in noncharge time and some increase in training costs as they were brought up to surveyor standards for shop and offshore training gigs. JB said that was acceptable. One of the major steps to implement the program was aligning a handful of different but similar OEM setups into SDPs, much like we do with the three big BOP OEMs. I had meetings with Wild Well Control, Cross and Blue Ocean Technologies. All were enthused and receptive to the concept and appreciated the effort we were showing as unfamiliarity with the equipment was alwasy a slow down for our surveyors. However, all of them expressed concern over the contractual arrangements with LR (we had none). I asked Rene B on several occasssions to work this but she was always too busy with some world or global MSA deal. I offered a suggestion that we pursue a modified contract with liability limited to a E&O policy that LR would assign to each job. I had discussed this concept with Charles Simmons, he had worked for Wild Well Control several years prior, and he felt that it was a workable solution if we could get London to listen--that was the challenge. And then Ricky shows up filling an unposted job opening and pursuiing the same work with the same customers where LRDIS and Comp have a good working relationship with all of the vendors including Cross.

I would expect that such an aggregious situation has generated a CARA from someone. You will have my complete cooperation during that investigation. Please call upon me as needed.

Thanks,

Dave
PS -- After hearing from Ricky on Thursday I felt that Cross should know that Comp would be there for them without me so I sent the below email, no response. I suspect that Ricky believes he will handle the entire deal including providing the Comp docs.

From: "Pemberton, Dave"
<Dave.Pemberton@lr.org<mailto:Dave.Pemberton@lr.org>>
Date: September 10, 2015 at 6:32:47 PM CDT
To: "dkercsmar@thecrossgroup.com<mailto:dkercsmar@thecrossgroup.com>"
<dkercsmar@thecrossgroup.com<mailto:dkercsmar@thecrossgroup.com>>
Subject: update


David --

I was informed by Ricky Eaton late this afternoon that you and Cross want to insure that there is no possible contact with me should Cross select LR for a future project. This is unexpected and devasting news for me but my department must still do their duty and provide processing of the data necessary to provide Cross with verification documents.

I would like to offer the option to select from the remaining Team -- Ted Cole; Mark Theisen and Abhijit Mohod from those that have worked prior Cross jobs and Jorge Roman--he is new to the Team--as the one you wish to deal with on any Cross project.

Regards,

Dave

# EXHIBIT 1-B

From: David Kercsmar [dkercsmar@thecrossgroup.com]
Sent: Tuesday, September 22, 2015 8:48 AM
To: Dave Pemberton
Subject: RE: Update

David,
After our discussion I have informed our counsel of my intentions regarding your termination and the letter I was thinking about writing. Since I have no proof that the exact reason for your termination was because of a related matter with me or our company, our counsel suggested I stay completely out if this matter. Therefore I will not be able to involve myself at this time. I hope this does not impede our friendship and looking forward to working with you in the future..

Best Regards,

David Kercsmar
Cell# 713-628-9543
dkercsmar@thecrossgroup.com

-----Original Message-----
From: Dave Pemberton [mailto:DPemberton@enersea.com]
Sent: Tuesday, September 22, 2015 8:00 AM
To: David Kercsmar
Subject: Update


Hi David-

I know that you are busy but I am meeting with my attorney on Thursay PM and it would be good to have your letter for that meeting. As I indicated, LR gave me nothing in the way of an exit package, so private medical coverage and no pay will deplete savings rapidly.

I feel that my interview with the company referenced below went well but it didn't appear that they intend to make staff additions until after the first of the year. I will continue looking.

I have asked my attorney only to reference the letter rather than broadcast it. He feels that having it in hand and calling them out on the lie they


EXHIBIT 1-B

know that they fabricated will be adequate.

Regards,

Dave

---

From: Dave Pemberton
Sent: Friday, September 18, 2015 7:32 AM
To: dkercsmar@thecrossgroup.com
Subject: Update

Hey David -- possibly some good news. A group that has some ex-WEST guys contacted me late yesterday and want me in for an interview on Monday. I had thought about getting totally out of the oilfield and back to my lifelong experience in power plants but if something can be worked out with them, I will likely go that direction--so maybe a chance to work together again.

Regards,
Dave

---

From: Dave Pemberton
Sent: Thursday, September 17, 2015 3:12 PM
To: dkercsmar@thecrossgroup.com
Subject: Letter

David --

I thought a bit more about your offer to write a letter and I will take you up on that. Please include both not having the discussion with Ricky Eaton and your follow-up call the next day to John Hoefler as you described to me.

Please work this into your schedule, no immediate need. I am just thinking better to have it than not. Also, I feel company letterhead will add a level of authenticity and will appreciate your using it.

Please either/or send via email with the letter in PDF format or regular US mail:

David Pemberton
3912 Ace Street
Houston, TX 77063

Thanks again,

Dave

# EXHIBIT 1-C

## 2014 W-2 and EARNINGS SUMMARY — ADP

Safe, accurate, FAST! Use IRS e-file — Visit the IRS Web Site at www.irs.gov/efile

**W-2 Wage and Tax Statement 2014** — Employee Reference Copy
Copy C for employee's records. OMB No. 1545-0008

| Field | Value |
|---|---|
| d Control number | 428309 DALL/AOH 895016 |
| Dept./Corp. | A |
| Employer use only | 250 |
| c Employer's name, address, and ZIP code | LLOYDS REGISTER DRILLING INTEGRITY SERVICES INC, 1330 ENCLAVE PKWY STE200, HOUSTON TX 77077 |
| Batch # | 01372 |
| e/f Employee's name, address, and ZIP code | DAVID J. PEMBERTON, 4100 CHILDRESS, HOUSTON TX 77005 |
| b Employer's FED ID number | 56-1992222 |
| a Employee's SSA number | REDACTED |
| 1 Wages, tips, other comp. | 291754.20 |
| 2 Federal income tax withheld | 76498.98 |
| 3 Social security wages | 117000.00 |
| 4 Social security tax withheld | 7254.00 |
| 5 Medicare wages and tips | 314754.20 |
| 6 Medicare tax withheld | 5596.73 |
| 7 Social security tips | |
| 8 Allocated tips | |
| 10 Dependent care benefits | |
| 11 Nonqualified plans | |
| 12a D | 23000.00 |
| 12b DD | 6469.80 |
| 13 Stat emp / Ret. plan / 3rd party sick pay | X (Ret. plan) |
| 14 Other | |
| 15 State / Employer's state ID no. | TX |
| 16 State wages, tips, etc. | |
| 17 State income tax | |
| 18 Local wages, tips, etc. | |
| 19 Local income tax | |
| 20 Locality name | |

### Earnings Summary

This blue Earnings Summary section is included with your W-2 to help describe portions in more detail. The reverse side includes general information that you may also find helpful.

1. The following information reflects your final 2014 pay stub plus any adjustments submitted by your employer.

| | Amount | | Amount |
|---|---|---|---|
| Gross Pay | 315354.20 | Social Security Tax Withheld (Box 4 of W-2) | 7254.00 |
| | | TX. State Income Tax (Box 17 of W-2) | |
| | | SUI/SDI (Box 14 of W-2) | |
| Fed. Income Tax Withheld (Box 2 of W-2) | 76498.98 | Medicare Tax Withheld (Box 6 of W-2) Includes Addl Med | 5596.73   1032.79 |

2. Your Gross Pay was adjusted as follows to produce your W-2 Statement.

| | Wages, Tips, other Compensation Box 1 of W-2 | Social Security Wages Box 3 of W-2 | Medicare Wages Box 5 of W-2 | TX. State Wages, Tips, Etc. Box 16 of W-2 |
|---|---|---|---|---|
| Gross Pay | 315,354.20 | 315,354.20 | 315,354.20 | |
| Less 401(k) (D-Box 12) | 23,000.00 | N/A | N/A | |
| Less Medical FSA | 600.00 | 600.00 | 600.00 | |
| Wages Over Limit | N/A | 197,754.20 | N/A | |
| Reported W-2 Wages | 291,754.20 | 117,000.00 | 314,754.20 | |

3. Employee W-4 Profile. To change your Employee W-4 Profile Information, file a new W-4 with your payroll dept.

DAVID J. PEMBERTON
4100 CHILDRESS
HOUSTON TX 77005

Social Security Number: REDACTED
Taxable Marital Status: SINGLE
Exemptions/Allowances:
FEDERAL: 1
STATE: No State Income Tax

© 2014 ADP, LLC

--- Fold and Detach Here ---

**Federal Filing Copy — W-2 Wage and Tax Statement 2014** (Copy B to be filed with employee's Federal Income Tax Return)

- 1 Wages, tips, other comp.: 291754.20
- 2 Federal income tax withheld: 76498.98
- 3 Social security wages: 117000.00
- 4 Social security tax withheld: 7254.00
- 5 Medicare wages and tips: 314754.20
- 6 Medicare tax withheld: 5596.73
- Control number: 428309 DALL/AOH 895016, Corp A, 250
- Employer: LLOYDS REGISTER DRILLING INTEGRITY SERVICES INC, 1330 ENCLAVE PKWY STE200, HOUSTON TX 77077
- Employer's FED ID: 56-1992222
- Employee's SSA: REDACTED
- 12a D 23000.00
- 12b DD 6469.80
- 13 Ret. plan: X
- Employee: DAVID J. PEMBERTON, 4100 CHILDRESS, HOUSTON TX 77005
- State: TX

**TX State Reference Copy — W-2 2014** (same figures as above)

**TX State Filing Copy — W-2 Wage and Tax Statement 2014** (Copy 2 to be filed with employee's State Income Tax Return) — (same figures as above)

EXHIBIT 1-C

# EXHIBIT 1-D

David Pemberton | My Home | My Profile | Logoff

## Claim and Payment Status

### Claimant Information

**Name:** DAVID J PEMBERTON

**Social Security Number (SSN):** XXX-XX-5686

- Apply For Benefits
- Electronic Correspondence Sign-up
- Claim and Payment Status
- Payment Request
- Work Search Log
- WorkInTexas.com
- IRS 1099-G Information
- Payment Option
- Appeal List
- Request Your Waiting Week

### Claim Information

There are no benefits left on your current claim, which is in effect until Oc Oct 09, 2016.

| | |
|---|---|
| Claim Type: | Regular Unemployment Benefi |
| Claim Start Date: | Oct 11, 2015 |
| Weekly Benefit Amount: | $479.00 |
| Maximum Possible Benefits: | $12,454.00 |
| Benefits Paid to Date: | $12,454.00 |
| Benefits Remaining: | $0.00 |

Types of additional extended benefits available (PDF)

Most Recent Payment


EXHIBIT 1-D

**Most Recent Payment**

| | |
|---|---|
| TWC Processed Date: | **May 09, 2016** |
| Amount Deposited: | **$0.00** |
| For Week(s): | **May 01, 2016 to May 07, 2016**<br>**Apr 24, 2016 to Apr 30, 2016** |

**This is not a full payment for the week(s) listed. View Payment Details**

## Payment Summary

View Payment Details by Week

1-12 of 30

| Week(s) | TWC Processed Date |
|---|---|
| May 01, 2016 to May 07, 2016 | May 09 |
| Apr 24, 2016 to Apr 30, 2016 | May 09 |
| Apr 17, 2016 to Apr 23, 2016 | Apr 25 |
| Apr 10, 2016 to Apr 16, 2016 | Apr 25 |
| Apr 03, 2016 to Apr 09, 2016 | Apr 12 |
| Mar 27, 2016 to Apr 02, 2016 | Apr 12 |
| Mar 20, 2016 to Mar 26, 2016 | Mar 29 |
| Mar 13, 2016 to Mar 19, 2016 | Mar 29 |
| Mar 06, 2016 to Mar 12, 2016 | Mar 14 |
| Feb 28, 2016 to Mar 05, 2016 | Mar 14 |
| Feb 21, 2016 to Feb 27, 2016 | Mar 01 |
| Feb 14, 2016 to Feb 20, 2016 | Mar 01 |

David Pemberton | My Home | My Profile | Logoff

# IRS 1099-G Information

## Recipient's Information

| | |
|---|---|
| Name: | DAVID J PEMBERTON |
| Social Security Number (SSN): | XXX-XX-5686 |

Apply For Benefits

Apply For Benefits

Electronic Correspondence Sign-up

Claim and Payment Status

Payment Request

Work Search Log

WorkInTexas.com

IRS 1099-G Information

Payment Option

Appeal List

Request Your Waiting Week

Select Another Year

## Payer's Information

| | |
|---|---|
| Payer's Name: | Texas Workforce Commission |
| Payer's Address: | 101 E. 15th Street Austin, Texas 78 |
| Payer's Federal Identification Number: | 74-2764775 |

## IRS 1099-G Details

The Internal Revenue Service (IRS) requires you to report your unemployment con (Form 1099-G) in January containing the total amount of unemployment compensa during the last calendar year. This information is available through December 31.

Your Form 1099-G, which gives this information, does not have to be attached to y the IRS. Keep a copy of your Form 1099-G for your personal records.

Tax Year:

Unemployment Compensation (Box 1):

View how the unemployment compensation amount is calculated

Federal Income Tax Withheld (Box 4):

ATAA Payments (Box 5):

If you want TWC to mail you a duplicate Form 1099-G, call    Tele-Serv and press Make sure that TWC has your correct address before you request the duplicate.

## Request 1099-G Information for Prior Year(s)

TWC has records for the past five tax years.

- To view prior year(s) of 1099-G information on the Internet, select the link at Year and then select the desired year.
- To request a copy of your Form 1099-G, call the TWC Tele-Center at **(800)** Friday, 8:00 a.m. to 6:00 p.m., Central Time.