United States District Court
Southern District of Texas
**ENTERED**
November 17, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID PEMBERTON, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:16-CV-01732 |
| | § | |
| LLOYD'S REGISTER DRILLING | § | |
| INTEGRITY SERVICES, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM & ORDER

Before the Court is the Motion to Strike Use of Position Statement and Motion for Protective Order (Doc. No. 12) submitted by Defendants Lloyd's Register Drilling Integrity Services, Inc. (LRDIS") and Ricky Eaton (collectively, "Defendants"). After considering Defendants' motion, the responses thereto and applicable law, the Court finds that the motion must be denied.

## I.   BACKGROUND

This is an age discrimination case. Plaintiff David Pemberton was fired from his position at LRDIS at the age of 66. (Complaint, Doc. No. 7, ¶ 2.) Mr. Pemberton worked at LRDIS from 2013 to 2015 as a Compliance Lead Manager, where he conducted safety inspections and certifications of offshore deep-water oil rigs in the Gulf of Mexico. (Doc. No. 7, ¶ 9.) According to Mr. Pemberton, he had years of industry experience, and his colleagues and customers regarded him highly. (Doc. No. 7, ¶ 9.) In the summer of 2015, Mr. Pemberton received an unfavorable performance review rating, after his manager was allegedly pressured to lower Mr. Pemberton's evaluation score. (Doc. No. 7, ¶ 12.) That September, Ricky Eaton, a manager at LRDIS purportedly told a fellow senior employee that a specific customer did not want to work

1

with Mr. Pemberton. (Doc. No. 7, ¶¶ 14-15.) Mr. Pemberton was shocked when Mr. Eaton told him about the customer complaint. Mr. Pemberton then reported his conversation with Mr. Eaton to his supervisor and another manager. Neither manager investigated the customer complaint allegations. On September 17, 2015, LRDIS fired Mr. Pemberton. (Doc. No. 7, ¶ 16-17.)

After his termination, Mr. Pemberton filed a charge of age discrimination with the Texas Workforce Commission – Civil Rights Division ("TWC-CRD") and the Equal Employment Opportunity Commission ("EEOC"). (Doc. No. 7, ¶ 23.) LRDIS then submitted a Position Statement to the EEOC, denying any unfair treatment for any unlawful reason, and citing Mr. Pemberton's attitude and poor teamwork as grounds for termination. (Doc. No. 7, Ex. 6.) The Position Statement referenced complaints by LRDIS' clients, although it did not mention any by name. (Doc. No. 7, Ex. 6.) In LRDIS' cover letter to the EEOC, it labeled the Position Statement as confidential commercial information; the EEOC found LRDIS' assertion of confidentiality unwarranted. (*See* Doc. No. 12, Exs. 2-3.) Defendants now request that the Court strike any use of the Position Statement, arguing it is privileged material and hearsay.

## II.   **LEGAL STANDARD**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . . Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).[1] Upon a motion from a party, the court may issue "an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . .

---

[1] Plaintiff argued Defendant's motion was untimely under Fed. R. Civ. P. 12(f). In their reply brief, Defendants explain that they seek to strike the Position Statement pursuant to Rule 26, not Rule 12(f). The Court agrees with Defendants that rules governing discovery proceedings apply here. Thus, the Court does not need to consider timeliness under Rule 12(f).

forbidding the disclosure of discovery." Fed. R. Civ. P. 26(c).

"Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3)(A). A party may not, "without purported necessity or justification . . . secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties. . . . Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947).

## III.   ANALYSIS

Defendants argue the Position Statement should be excluded because it is privileged material and hearsay. The Court finds the Position Statement does not fall within attorney-client privileged communication or attorney work product. Additionally, the Position Statement is not hearsay. It would therefore be inappropriate to strike use of the Position Statement.

### A. The Position Statement is not a privileged communication or attorney work product.

Defendants incorrectly believed that their request to the EEOC for confidentiality converted the Position Statement into privileged communication. LRDIS announced in its cover letter accompanying the Position Statement: "The Company considers its position statement and other materials submitted to the Commission to be confidential commercial information pursuant to the nondisclosure rules under Section 706(b), Title VII of the Civil Rights Act of 1964 and 5 U.S.C. 552(b)." (Doc. No. 12, Ex. 2.) Section 706(b) states:

> If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. Nothing said or done during and as a part of such informal endeavors may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the

3

written consent of the persons concerned. 42 U.S.C. § 2000e-5 (2015).

Section 706(b) pertains to statements made during efforts of "conference, conciliation, and persuasion." The Fifth Circuit has "distinguished between purely factual material related to the merits of the charge and proposals and counter-proposals of compromise made by the parties during the EEOC's efforts to conciliate." *Olitsky v. Spencer Gifts, Inc.*, 964 F.2d 1471, 1477 (5th Cir. 1992) (internal citations omitted). In *Olitsky*, the court held that a position letter—which denied that the employer had discriminated and gave alternate reasons for firing the complaining employee—did not constitute conciliation evidence. 964 F.2d at 1477. LRDIS' only allusion to conciliation was its request to the EEOC to issue a No Cause finding and dismiss Mr. Pemberton's charge; there was no mention of a settlement offer or conversation. (Doc. No. 7, Ex. 6.) As in *Olitsky*, the Position Statement's content related to factual information regarding the merits of Mr. Pemberton's claim. Because the Position Statement was not conciliation evidence, § 706(b) does not apply to this document, and it may be disclosed.

The Position Statement also does not qualify as work product. Work product is an attorney's preparation for a case, reflected in "interviews, statements, memoranda, correspondence, briefs, mental impressions, [and] personal beliefs," among other things. *Hickman*, 329 U.S. at 511. The work product protection allows "a lawyer [to] work with a certain degree of privacy" to "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Id.* Defendant argues that the Position Statement is work product because it was prepared in anticipation of litigation and reflects counsel's legal argument. But not "all written materials obtained or prepared by an adversary's counsel with an eye toward litigation are necessarily free from discovery." *Id.*

4

The Position Statement is unlike true work product. Courts have excluded opinion letters prepared by an expert upon counsel's request, studies prepared by an accountant in anticipation of litigation, and earlier drafts of position letters. *See, e.g., Treat v. Tom Kelley Buick Pontiac GMC, Inc.*, No. 1:08-CV-173, 2009 WL 1543651, at *10 (N.D. Ind. June 2, 2009); *Pacamor Bearings, Inc. v. Minebea Co.*, 918 F. Supp. 491, 514 (D.N.H. 1996). The Position Statement is distinct from any of these. Although counsel prepared it in anticipation of litigation, it does not reflect the lawyer's attempts to process her legal theories and strategies free from interference. Nor was the Position Statement an exchange of notes or mental impressions between the LRDIC's lawyers and the EEOC. The policy behind protecting work product—to promote effective representation by allowing a lawyer to securely write down her thoughts in preparation for trial—does not call for restricting disclosure of the Position Statement.[2]

**B.   The Position Statement is not hearsay.**

Defendant also seeks to exclude the Position Statement on hearsay grounds, citing Federal Rules of Evidence 613, 801, 802 and 805. However, the Position Statement is not hearsay. If Plaintiff attempts to introduce the Position Statement in evidence, it will be "a statement offered against an opposing party . . . made by the party's agent or employee on a matter within the scope of that relationship and while it existed."   Fed. R. Evid. 801(d)(2)(D). LRDIS's counsel submitted the letter to the EEOC. Because the "attorney is the agent of his client," the Position Statement is a statement made by Defendants' agent. *Rogers v. The Marshal*, 68 U.S. 644, 651 (1863). *See also Kimble v. D. J. McDuffy, Inc.*, 648 F.2d 340, 354, n.4 (5th Cir.

---

[2] The Parties discuss whether Defendants waived a privilege by sending the Position Statement to the EEOC. Because the Court finds that the Position Statement is neither privileged communications nor work product, the Court does not need to address the waiver question.

1981) ("in the eyes of the law the agent is considered as standing in the place of the principal"). The Position Statement is therefore not hearsay under Fed. R. Evid. 801(d).

The Fifth Circuit has repeatedly found position statements admissible. *See, e.g. Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 237 (5th Cir. 2015); *Miller v. Raytheon Co.*, 716 F.3d 138, 144 (5th Cir. 2013); *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 282 (5th Cir. 2000). Plaintiff argues the Position Statement is relevant to show inconsistent reasons given by Defendants for firing Mr. Pemberton. The Fifth Circuit has explicitly allowed employees to use position statements containing false information to show pretext. *See Burton*, 798 F.3d at 237 ("A jury may view erroneous statements in an EEOC position statement as circumstantial evidence of discrimination"); *see also Miller*, 716 F.3d at 144. Although one court upheld the exclusion of an employer's letter to the EEOC that would reveal its changing positions over the course of litigation, *Lindsey v. Prive Corp.*, 161 F.3d 886, 894–95 (5th Cir. 1998), that decision is in conflict with subsequent appellate decisions. Given prior courts' admission of position statements in similar circumstances, it would be inappropriate to prohibit any and all future uses of the Position Statement at this time.

IV.   **CONCLUSION**

Defendants have failed to show that the Position Statement is privileged or hearsay. In this early stage of litigation, the Court is hesitant to strike, or issue a protective order as to, a potentially relevant document that is not subject to any exclusion. The Court hereby **DENIES** Defendants' Motion to Strike Use of Position Statement and Motion for Protective Order.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on the 16th of November, 2016.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE